## HEWEY v. ANDREWS.

(159 Pac. 1149; 161 Pac. 108.)

**Appeal and Error—Time to Appeal—Computation.**

1. Where defendant moved for judgment *non obstante veredicto,*
such motion would not ordinarily suspend the running of the limita-
tion for appeal, in view of Section 201, L. O. L., requiring judgment
in conformity with the verdict to be entered on the day of the ver-
dict; but, where the original judgment was modified by dismissal as
to one defendant, the appeal time for another defendant runs from
the second judgment, and appeal within 60 days thereof is in time.

**Time—Computation—Sunday.**

2. Where the last day for perfecting appeal fell on Sunday, notice
was properly filed the next day, under Section 531, L. O. L., as to
computation of time.

[As to computation of time for performing act when last day
falls on Sunday, see note in Ann. Cas. 1914B, 1036.]

**Action—Parties Jointly Liable—Default.**

3. Where the complaint alleged a joint liability of all defendants,
the court may proceed to trial as to those who have answered and
joined issue without first entering default and judgment against
others who had been served but did not appear, for the old techni-
cality with respect to joint actions has been relaxed, and, though a

joint liability is averred, recovery may be had on proof of a several liability.

**Husband and Wife—Contracts—Signing of Wife's Name.**

4. Where a husband without authority signed his wife's name to an agreement to pay brokerage fees, the wife is not liable for such fees.

**Frauds, Statute of—Jury Question.**

5. In an action for brokerage fees, where a written agreement by the owner to pay brokerage fees was supplemented by telegrams and a letter, *held*, that under the evidence it was a question for the jury whether there was a sufficient memorandum within the statute of frauds (Section 808, L. O. L.), declaring that an agreement authorizing or employing a broker to sell real estate for compensation or commission shall not be effective unless in writing.

**Appeal and Error—Review—Harmless Error.**

6. Error in instructing the jury that they might find against a particular defendant is cured by subsequent vacation of judgment and dismissal of the action against him.

**Appeal and Error—Objections—Sufficiency.**

7. In an action by a broker for commissions, objection to the admission of parol evidence, on the ground that no parol evidence was admissible to establish any of the issues in the case because of the statute of frauds (Section 808, L. O. L.), is insufficient to raise the question whether particular parol evidence was admissible, for parol evidence was, of course, admissible to establish some of the issues in the case, such as whether a sale was effected, etc., though the employment could not be established in that manner.

From Wasco: WILLIAM L. BRADSHAW, Judge.

This is an action by Sam Hewey against C. S. Andrews and Lillie M. Andrews and others. Judgment was rendered in favor of plaintiff against C. S. and Lillie M. Andrews after which it was modified to run against C. S. Andrews only, and he appealed. Plaintiff-respondent moves to dismiss the appeal.

MOTION DENIED.

*Mr. William H. Wilson,* for the motion.

*Mr. Ralph R. Duniway, contra.*

In Banc.    Opinion by MR. CHIEF JUSTICE MOORE.

This was an action by S. Hewey against C. S. Andrews, Lillie M. Andrews, Clarence L. Look and

Ethelda M. Look, to recover the balance of an alleged commission for services rendered by the plaintiff in effectuating the sale of land. The cause was tried and a verdict of $1,727.50 returned February 16, 1916, against C. S. Andrews and Lillie M. Andrews, whose counsel, invoking the rule established in *Fisk* v. *Henarie,* 14 Or. 29 (13 Pac. 193), *Wilson* v. *Blakeslee,* 16 Or. 43 (16 Pac. 872), *Thomas* v. *Barnes,* 34 Or. 416 (56 Pac. 73), and *North Pacific Lumber Co.* v. *Spore,* 44 Or. 462 (75 Pac. 890), moved for a judgment dismissing the action notwithstanding the verdict, on the ground that the obligation sued on was joint, and that as the trial was had and the verdict returned as to only two of the defendants, no valid judgment could be predicated thereon. This motion was denied March 1, 1916, by a judgment, a part of which reads:

"Thereupon it is hereby ordered that the judgment heretofore given and made in this court and cause on the sixteenth day of February, 1916, be and the same is hereby set aside, vacated, and held for naught as to the defendant Lillie M. Andrews, but the same is continued in full force and effect as to the defendant C. S. Andrews, and that this cause be, and the same is hereby, dismissed as to the defendants Lillie M. Andrews, Clarence L. Look, and Ethelda M. Look, and that the defendant Lillie M. Andrews have and recover of and from the plaintiff her costs and disbursements in this action to be taxed."

1. In order to review the latter determination C. S. Andrews, on April 29, 1916, served a notice of appeal, and filed it May 1st following. The plaintiff's counsel move to dismiss the appeal on the ground that it was not taken within the 60 days limited therefor. The statute regulating the recording of final determinations by a Circuit Court reads:

"If the trial be by jury, judgment shall be given by the court in conformity with the verdict and so entered

by the clerk within the day on which the verdict is returned": Section 201, L. O. L.

Under the provisions of this enactment a motion to set aside a verdict and for a new trial will not ordinarily suspend the running of the statute of limitations as to the time limited for taking an appeal: *Barde* v. *Wilson,* 54 Or. 68 (102 Pac. 301); *Oldland* v. *Oregon Coal & Nav. Co.,* 55 Or. 340 (99 Pac. 423, 102 Pac. 596); *Colgan* v. *Farmers & Mechanics' Bank,* 59 Or. 469 (106 Pac. 1134, 114 Pac. 460, 117 Pac. 807); *Macartney* v. *Shipherd,* 60 Or. 133 (117 Pac. 814, Ann. Cas. 1913D, 1257); *Gearin* v. *Portland Ry., L. & P. Co.,* 62 Or. 162 (124 Pac. 256); *Hahn* v. *Astoria National Bank,* 63 Or. 1 (114 Pac. 1134, 125 Pac. 284); *De Lore* v. *Smith,* 67 Or. 304 (132 Pac. 521, 136 Pac. 13, 49 L. A. R. (N. S.) 555); *Skelton* v. *Newberg,* 76 Or. 126, 136 (148 Pac. 53). Where, however, the original judgment is modified by a subsequent order, the date of the latter judgment is the time from which the limitation for taking the appeal should begin to run. In this instance the judgment was not altered as to C. S. Andrews, but if he were dissatisfied with the dismissal of the action as to Lillie M. Andrews, he would have been obliged to appeal from that determination, notwithstanding he may have taken an appeal from the original judgment. This procedure, if sanctioned, would necessitate two appeals by the same party when a single review of the final judgment by him ought to be sufficient, in which appeal the intermediate order could be reviewed: Section 558, L. O L. We conclude, therefore, that the original judgment, having been set aside in part, was in effect vacated in all particulars, and that the modified judgment, by referring to the preceding determination, incorporated therein the original judgment as to C. S. Andrews,

thus making the latter judgment final, and the one from which this appeal was properly taken.

2. By the statutory method of computing time the last day thus limited for perfecting the appeal was April 30, 1916; but, as that day was Sunday, the notice was properly filed the next day: Section 531, L. O. L.

The motion to dismiss the appeal is denied.

MOTION DENIED.

---

Affirmed November 28, 1916, rehearing denied January 9, 1917.

### ON THE MERITS.

(161 Pac. 108.)

Department 1.   Statement by MR. JUSTICE BENSON.

This is an action to recover an unpaid balance of a commission alleged to have been earned by plaintiff as a real estate broker.   It is averred in the complaint that in January, 1915, the defendants employed plaintiff to procure a purchaser for a tract of land therein described; that he was to have as compensation therefor one half of all that defendants might receive for such property in excess of $20,000; that plaintiff did find a purchaser at a price exceeding $26,000; that he afterward agreed to accept $3,000 in full for his commission, and defendants agreed in writing to pay the same; that defendants have paid thereon the sum of $1,272.50, and there remains unpaid $1,727.50; that demand has been made for payment thereof, which has been refused.   Then follows a prayer for judgment.

The defendants C. S. Andrews and Lillie M. Andrews answered separately with general denials.   The defendants Clarence L. Look and Ethelda M. Look

were personally served with summons but made no appearance. When the cause was called for trial, the answering defendants objected to proceeding further until default and judgment should be entered against the defendants C. L. and Ethelda M. Look. The objection being overruled, a trial was had resulting in a verdict against both the answering defendants in the sum of $1,727.50, and on the same day these defendants filed separate motions for judgment on the verdict dismissing the suit. On February 29th, a judgment was entered in accordance with the verdict in favor of plaintiff. When the plaintiff rested, the defendant C. S. Andrews moved the court for a nonsuit, and for a directed verdict in his favor, on the ground that the plaintiff had not introduced testimony supporting, or tending to support, the allegations of his complaint, and that the testimony introduced is in violation of the provisions of the statute of frauds, which motions were overruled by the court, and the defendants did not offer any evidence upon the trial. On February 29th, the court entered a judgment in favor of plaintiff in accordance with the verdict and, having taken under advisement the motions of the defendants for a judgment dismissing the suit, on March 1st, made and entered the following final judgment order:

"Now on this day the court having considered the motion of the defendants C. S. Andrews and Lillie M. Andrews for a judgment against the verdict dismissing the action and for a judgment against the plaintiff for their costs and disbursements incurred herein upon the ground that this is an action upon an alleged joint liability of all the defendants, and the trial being against a portion of the defendants only, there can be no judgment against separate defendants, and the court being fully advised as to said motion.

"It is ordered that said motion be and the same is in all things denied upon the grounds mentioned and set forth in said motion, but it appearing to the court from all the evidence in said cause that there was no joint obligation on the part of any of the defendants to pay the commission claimed in the plaintiff's complaint and no contract or obligation within the provisions and requirements of Section 808, Lord's Oregon Laws, as to the defendants Clarence L. Look, Ethelda M. Look, and Lillie M. Andrews, and that no cause of action has been proved against said defendants or any of them, and that the evidence offered at the trial of said cause tended to show and did show a separate agreement by the defendant C. S. Andrews alone.

"Thereupon it is hereby ordered that the judgment heretofore given and made in this court and cause on the 16th day of February, 1916, be and the same is hereby set aside, vacated, and held for naught as to the defendant Lillie M. Andrews, but the same is continued in full force and effect as to the defendant C. S. Andrews, and that this cause be and the same is hereby dismissed as to the defendants Lillie M. Andrews, Clarence L. Look, and Ethelda M. Look, and that the defendant Lillie M. Andrews have and recover of and from the plaintiff her costs and disbursements in this action to be taxed."

The defendant C. S. Andrews appeals.

AFFIRMED.    REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondent there was a brief and an oral argument by *Mr. William H. Wilson.*

MR. JUSTICE BENSON delivered the opinion of the court.

3. There are several assignments of error, but they only involve two serious questions for the considera-

tion of this court: (1) Does the fact that the complaint alleges a joint liability of all the defendants preclude the court from proceeding to trial as to those who have answered and joined issue, without first entering default and judgment against others who have been regularly served with summons but have not made any appearance? (2) Is there sufficient competent evidence disclosed by the record to justify a submission of the case to the jury for their consideration?

In *Wilson* v. *Blakeslee,* 16 Or. 43 (16 Pac. 872), this court distinctly holds that it is error to enter a default and judgment against part of the defendants in an action upon a joint obligation before the trial of the action upon the issues raised by the answering defendants. In the case of *Dairy Assn.* v. *Schermerhorn,* 31 Or. 308 (51 Pac. 438), Mr. Justice Wolverton, speaking for the court, says:

"The idea formerly obtained that a joint obligation or contract constituted as indivisible demand. The several individuals jointly contracting were considered as a single entity, and, to describe that entity, it was necessary to name the identical individuals bound. A description which omitted any that were bound, or included others not bound, would not identify the entity. Hence it was requisite that all the individuals composing it should be charged, and no more; otherwise, the contract sued on would not be the one made. So, it was considered that an amendment which omitted a party formerly charged jointly with another was a statement of a new and distinct cause of action. Modern code practice, however, has materially encroached upon this idea, and a nonjoinder or misjoinder of parties defendant does not necessarily nonsuit the plaintiff or defeat the action. It is provided by statute that when an action is against two or more defendants, and 'all the defendants have been served, judgment may be taken against any or either of them severally, when the plaintiff would be entitled to judg-

ment against such defendant, or defendants, if the action had been against them, or either of them alone': Hill's Ann. Laws, § 60, subd. 3. Furthermore, 'judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants'; and, 'in an action against several defendants, the court may, in its discretion, render judgment against one or more of them, whenever a several judgment is proper, leaving the action to proceed against the others': Hill's Ann. Laws, §§ 244, 245. A statute identical in effect with these sections has received judicial construction in New York, and it is there held that: 'A plaintiff is not now to be nonsuited because he has brought too many parties into court. If he could recover against any of the defendants upon the facts proved had he sued them alone, the recovery against them is proper, although he may have joined others with them in the action against whom no liability is shown': *McIntosh* v. *Ensign*, 28 N. Y. 169, 172. And, under a statute of similar import more recently enacted, and which it was declared should receive the same construction as the former, ANDREWS, J., says: 'The common-law rule that, in an action against several defendants upon an alleged joint contract, the plaintiff must fail unless he establishes the joint liability of all the defendants, is no longer the rule of procedure in this state. By the former Code (Section 274), the court was authorized in an action against several defendants to render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment was proper. The court, in construing this provision, did not limit its application to cases of joint and several liability, but considered it as authorizing a separate judgment where a separate liability of some of the defendants was established on the trial, although the cause of action, as alleged in the complaint, was joint only': *Stedeker* v. *Bernard,* 102 N. Y. 327, 330 (6 N. E. 791).

"From these authorities the true and reasonable construction of the several sections of our statute alluded to would appear to be that when, in an action upon a joint contract, it is determined that one or

·more of the defendants are not liable, but that one or
.more of the others are, judgment may be given and
,rendered against those liable, whether their liability be
joint or several, and the other defendants may be dis-
missed.''

4, 5. Let us now examine the evidence presented
,upon the trial and apply the law as above quoted to
the established facts. On June 15, 1914, defendant
C. S. Andrews listed his farm of 1,280 acres in Wasco
·County with the firm of Hartman & Thompson of Port-
·land, Oregon, for sale, signing and leaving with them
a written memorandum containing the following
terms:

.''Messrs. Hartman & Thompson, Portland.

''In consideration of the benefit I expect to derive
from the sale of the property below described, and of
securing an interest and effort on your part and at
your expense, to obtain for me the sum below men-
tioned for said property, I hereby agree to sell and
·convey by a good and sufficient grant and deed of con-
veyance, and give the usual covenants therein, to you
·or your assigns, at any time within the next two mos
(or thereafter, until I give you ten days' notice to the
contrary in writing), the following described property,
viz.: Situate in 15 E. 1 S.  See abstract.  County of
Wasco, State of Oregon, with the appurtenances as
described below for the sum of —— dollars ($44,800)
to be paid as follows: You being at liberty to take or
sell the same on said terms.  In case a sale or ex-
·change of said property is effected, I agree to pay
you a commission of 2¼ per cent on the $44,800 above
stated or a lesser sum in case I agree to sell for less,
and after a deposit is taken, I will allow fifteen (15)
days to search title.

''[Signed]  C. S. ANDREWS (owner).

''L. M. ANDREWS (his wife).

''Subscribing witnesses (who listed this): Sam
Hewey, Tabor 3248.''

Thereafter, some months elapsed without a sale being effected, and then C. S. Andrews had a conversation with plaintiff in which he agreed that if he should find a buyer for the farm he would give him an additional commission of one half of all he should obtain for the property in excess of $20,000, and on January 5, 1915, plaintiff wired to C. S. Andrews, who was then in Los Angeles, as follows:

"Have prospective buyer for your Wasco County ranch will you confirm your offer to give me one half of all over twenty thousand dollars that I can get for this ranch cash payment buyer to assume mortgages this does not include stock implements and Clarence's lease on Kelly place wire answer care Stelwyn apartment number forty eight cor. St Clair and Washington.

"SAM HEWEY."

On January 6th, Andrews replied:

"I will give you one half of all over twenty thousand dollars that you can get me for my ranch buyer assuming mortgages this does not include stock. implements or Clarence's lease on Kelly place  Letter follows."

The letter reads thus:

"January 6, 1915.

"Mr. Sam Hewey, Stelwyn Apt. No. 48.
    "Portland, Oregon.
"My dear Mr. Hewey:
    "Your night telegram 'Have prospective buyer for your Wasco County ranch. Will you confirm your offer to give me one half of all over twenty thousand dollars that I can get for this ranch cash payment buyer to assume mortgages. This does not include stock implements and Clarence's lease on Kelly place. Wire answer care Stelwyn Apartment #48 Cor. St. Clair & Washington. Sam Hewey'
    "Sure thing! Mr. Hewey, yes, and I hope you make five thousand out of it and it is a grand good cheap buy at that figure. 'For exchange—or sale—1,280

acres, Oregon, wheat and stock farm, fully equipped, horses, hogs, poultry. Bank appraised value $40,461. Andrews, the Angelus Hotel.' I have been running this add here for a month and have had over 100 answers now. There are two parties that mean business and have good propositions and they look good to me. Now if your client means business you better hurry so I can shut off these two good prospects I have here. Should you not wire me again this week I will try to close with one of these two and will wire you again that I am bringing my customer up to see the 1,280. In other words the party closing first is the best man and he gets the farm. Now I wish you all kinds of luck and hope you make over $5,000.

"Yours very truly,
"C. S. ANDREWS."

On January 7th, plaintiff wired Andrews as follows:

"Your telegram received. I sold your ranch including stock implements, and Clarence lease on Kelly place. Price above twenty-five thousand. Have two hundred fifty dollar deposit. Twenty-five hundred to be paid in twenty days, Seventy-two hundred fifty in thirty days. Buyer to assume sixteen thousand one hundred twenty-five mortgages. You to square up with Kelly—Wire when can come, meet me at Stelwyn Apts.

"SAM HEWEY."

On January 8th the following reply was received:

"Allow me to congratulate you on the sale of wheat farm will meet you at Stelwyn Apartment number forty eight cor. St. Clair and Washington at nine on Monday.

"C. S. ANDREWS."

When the first memorandum above set out was delivered to Hewey, there was also delivered an abstract containing a detailed description of the land to be sold. The property was sold by Hewey to H. L. Price for a consideration of something more than $29,000. It

will be noted that the agreed commission on this amount would be considerably more than the sum prayed for in the complaint, but the evidence discloses that after the sale was consummated the plaintiff agreed to take a less amount and Andrews wrote out, signed and delivered to plaintiff the following instrument:

"I hereby agree to pay Sam Hewey three thousand ten and 50/100 dollars as extra commission above the regular 2½ per cent on the $29,580. Sale of my wheat ranch. Regular commission amounts to $739.50. C. S. Andrews, Jan. 11, 1915."

The plaintiff admits having received $1,272.50, leaving a balance of $1,727.50 still unpaid. The evidence also discloses the fact that the name of L. M. Andrews was signed to the Hartman & Thompson memorandum by C. S. Andrews, and it is not disclosed that he had any authority to act for her. It therefore clearly appears that plaintiff failed to establish any joint liability, and therefore, under the authorities above cited, it was not error for the court in its final judgment to dismiss the action as to all of the defendants except C. S. Andrews. It is contended by defendant that there is no competent evidence in the record satisfying the statute of frauds (Section 808, L. O. L.); but the writings set out herein when read together, as they should be, afford abundant competent evidence to go to the jury upon the question of a sufficient written memorandum under the statute of frauds.

6. It is true that the court erred in instructing the jury that they might find against the defendant Lillie M. Andrews, for there is absolutely no evidence in the record connecting her with the agreement made by her husband; but this error was obviated by the subsequent conduct of the court in vacating the judgment and dismissing the action as to her.

7. There is some discussion in the briefs of the admissibility of certain parol evidence, but the only objection made to the admission thereof, as disclosed by the bill of exceptions and the assignment of errors, was a general protest upon the expressed ground that no parol evidence whatever is admissible to establish any of the issues in the case because of the provisions of Section 808, L. O. L. However, this contention is untenable for the reason that the statute referred to' prohibits only the admission of parol evidence for the purpose of proving the terms of the agreement itself, and parol evidence is still admissible for the purpose of showing, for example, the fact that a purchaser was found, that a sale was effected, that a part of the agreed commission has been paid, and that there is an unpaid balance. The objection and exception are therefore unavailing.

The judgment is affirmed.

AFFIRMED.   REHEARING DENIED.

MR. JUSTICE BURNETT and MR. JUSTICE MCBRIDE concur.