Argued and submitted on petition for alternative writ January 4,
continued until further order January 26, 1966

COOK ET AL *v.* McCALL ET AL,
ENNA ET AL
410 P. 2d 505

*R. Vernon Cook,* Gresham, argued the cause and filed a brief for plaintiffs.

No appearance for defendants.

*James M. Burns,* Portland, argued the cause and filed a brief for intervenor-defendants.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Schwab, Justices.

GOODWIN, J.

The petitioners allege that the allocation of representatives to the subdistricts of Representative District 6 (Multnomah County) as provided by ORS 171.043 violates Oregon Constitution, Art IV, § 7,[1] and ask this court to grant relief by way of mandamus.

■ As a preliminary matter we called for oral argument upon the question of accepting discretionary jurisdiction of the case. The respondents named in the petition declined to appear in opposition thereto, but intervenors from Multnomah County asked leave to appear. With the consent of the petitioners, the intervenors were heard in opposition to our taking jurisdiction. Arguments on the merits were also heard. We have concluded that the case is a proper one for this court to consider on its merits.

---

[1] "* * * Senatorial or representative districts comprising not more than one county may be divided into subdistricts from time to time by law. Subdistricts shall be composed of contiguous territory within the district; and the ratios to population of senators or representatives, as the case may be, elected from the subdistricts, shall be substantially equal within the district."

## ON THE MERITS

In 1954 the voters of Oregon amended the state constitution to provide methods for accomplishing decennial changes when necessary in the apportionment of members of the state Senate and House of Representatives. In 1955, the Legislative Assembly enacted ORS 171.043, which divides Representative District 6 (Multnomah County) into five representative subdistricts, fixing the boundaries of each. The section also allocates to the several subdistricts the sixteen representatives which, in 1955, were all that were provided by law for Multnomah County. As the result of litigation following the 1960 federal decennial census, however, Multnomah County was given a seventeenth representative. See *In re Legislative Apportionment*, 228 Or 575, 365 P2d 1042 (1961).

Because ORS 171.043 remains as enacted in 1955, it does not allocate the seventeenth representative to any of the existing subdistricts. Accordingly, the state and county officers who conduct elections have, apparently, concluded that candidates for the office of the seventeenth representative should run in the entire district, at large. In the elections of 1962, the seventeenth representative from District 6 was elected by the voters of the district at large. In 1964, the same procedure was followed.

The petition in the case at bar is the first challenge in any court of the constitutionality of the procedure followed in the two most recent elections. (The petition alleges that the question of the constitutionality of ORS 171.043 was presented to the Legislative Assembly in 1965, but that no action was taken.)

The petitioners pray that this court order the executive officers charged with responsibility for the

conduct of the primary and general elections of 1966 to allocate the seventeenth representative to one of the existing subdistricts (specifically the East County subdistrict), or, in the alternative, that this court order the election of all seventeen representatives from District 6 to be by the voters of the district at large.

The following table, taken from the petition, shows the 1960 population by subdistrict, together with the number of representatives and the population per representative by subdistrict:

| Subdistrict | Representatives | Population | Ratio |
|---|---|---|---|
| West | 3 | 85,313 | 28,438/1 |
| South City | 3 | 98,608 | 32,869/1 |
| East Central City | 4 | 124,025 | 31,006/1 |
| North City | 3 | 86,125 | 28,708/1 |
| East County | 3 | 128,742 | 42,914/1 |

Assuming, since the figures are not denied, that they are accurate, it would appear that the present statute does not distribute the sixteen subdistrict representatives in accordance with Oregon Constitution, Art IV, § 7. If the seventeenth representative were allocated to the East County subdistrict, and if all subdistrict boundaries remained unchanged, the representative ratio in the East County subdistrict would be 32,185/1, based upon 1960 population figures.

The intervenors do not contend that the present subdistrict boundaries and the allocation of representatives are constitutional. Neither do they contend that the allocation of the seventeenth representative to the East County subdistrict would be bad legislation. They resist judicial intervention on the ground that questions of redrawing boundaries or re-allocat-

ing representatives are questions that should be decided in the first instance by the legislative, rather than by the judicial, branch of government.

■ We believe that until the Legislative Assembly has demonstrated in its next session its unwillingness or inability to act, it would be a proper exercise of judicial restraint for this court to permit the Legislative Assembly to exercise its own choices among a wide variety of alternatives that might be offered. In contrast with the narrow choices presented in court by litigants, the choices open to the Assembly are innumerable.

We are satisfied that if the Assembly, now that ORS 171.043 has been challenged in court, should again fail to act, it would be proper for this court to order some measure of relief in compliance with Oregon Constitution, Art IV, § 7. Due respect for the separation of powers expressed in Article III, § 1, however, together with the conviction that legislative duties should be performed if possible by the representatives elected for that purpose compel the conclusion that we should not at this time choose between the limited alternatives proposed by the petitioners. Such an exercise of legislative power should be undertaken by a court only when no other method will achieve a constitutional result within a reasonable time.

■ Until this case was filed, virtually on the eve of the 1966 primary elections, the Legislative Assembly had not had its failure to amend ORS 171.043 questioned in any court. The mere failure of a legislative body to adopt one proposed amendment does not necessarily justify judicial intervention to accomplish such an amendment. Considerations of political theory as well as common sense suggest that legislative bodies rather than courts ought to decide questions of ap-

portionment. Courts are bound strictly by existing laws to the extent that the laws are constitutional, and can choose only between polarized alternatives. Legislative bodies, bound only by the Constitution, can debate, bargain, compromise, enact, repeal, and amend, and may continue such exercises until the day of adjournment. The proper forum in which the present issue should be settled is the Legislative Assembly.

We hold, therefore, that the amending of ORS 171.043 should be kept open until after the adjournment of the next regular session of the Legislative Assembly. If, upon adjournment, the Assembly has not seen fit to correct the undenied imbalance which exists within Representative District 6, this court will hear further argument upon the nature and extent of relief to which the petitioners may be entitled.

Cause continued until further order of this court.